Gideon Kracov (State Bar No. 179815)
LAW OFFICE OF GIDEON KRACOV
801 S. Grand Avenue, 11th Floor
Los Angeles, CA 90017-4645
Tel: (213) 629-2071
Fax: (213) 623-7755
Email: gk@gideonlaw.net

Arthur Pugsley (State Bar No. 252200)
Melissa Kelly (State Bar No. 300817)
LOS ANGELES WATERKEEPER
120 Broadway, Suite 105
Santa Monica, CA 90401
Tel: (310) 394-6162
Fax: (310) 394-6178
Email: arthur@lawaterkeeper.org
Email: melissa@lawaterkeeper.org

Attorneys for Plaintiff LOS ANGELES WATERKEEPER

William W. Funderburk, Jr. (State Bar No. 176244)
Anna L. Le May (State Bar No. 258312)
CASTELLON & FUNDERBURK LLP
811 Wilshire Blvd., Suite 1025
Los Angeles, California 90017
Tel. (213) 623-7515
Fax. (213) 532-3984
Email: wfunderburk@candffirm.com
Email: alemay@candffirm.com

Attorneys for Defendant BELL FOUNDRY CO.

JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a non-profit corporation,<br><br>　　　　Plaintiff,<br>　　vs.<br><br>BELL FOUNDRY CO. a corporation,<br>　　　　Defendant. | Case No.: 2:16-cv-07389-JFW-PJW<br><br>**[PROPOSED] CONSENT DECREE AND ORDER**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq.)**<br><br>Judge: John F. Walter |

1        **WHEREAS,** Los Angeles Waterkeeper ("Waterkeeper") is a 501(c)(3) non-

2  profit public benefit corporation organized under the laws of the State of

3  California, with its main office in Santa Monica, California.

4        **WHEREAS,** Waterkeeper is dedicated to the preservation, protection and

5  defense of the surface, ground, coastal and ocean waters of Los Angeles County

6  from all sources of pollution and degradation;

7        **WHEREAS,** the Bell Foundry Co. facility is located at 5310 and 5311

8  Southern Avenue, South Gate, California ("Bell Facility" or "Facility").

9        **WHEREAS,** the Facility is owned and/or operated by Bell Foundry Co., a

10  California corporation ("Defendant" or "Bell Foundry");

11        **WHEREAS,** on May 17, 2016, Waterkeeper sent a sixty (60) day notice

12  letter ("Notice Letter") to Defendant, the United States Environmental Protection

13  Agency ("EPA"), EPA Region IX, California's State Water Resources Control

14  Board ("State Board") and the Regional Water Quality Control Board ("Regional

15  Board"), stating its intent to file suit for violations of the Federal Water Pollution

16  Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"). The

17  Notice Letter alleged violations of the Clean Water Act for Defendant's alleged

18  discharges of pollutants into storm drains and receiving waters, including the Los

19  Angeles River ("River") and ultimately the Pacific Ocean, in alleged violation of

20  National Pollution Discharge Elimination System ("NPDES") General Permit No.

21  CAS000001 [State Board] Water Quality Order No. 97-03-DWQ ("1997 Permit"),

22  as superseded by Order No. 2014-0057-DWQ ("2014 Permit"). The 1997 Permit

23  and/or 2014 Permit may be referred to generically as the "Storm Water Permit";

24        **WHEREAS**, on October 2, 2016 Waterkeeper filed a complaint

25  ("Complaint") against Defendant in the United States District Court, Central

26  District of California (Case No. 2:16-cv-07389 JFW-PJW), entitled *Los Angeles*

27  *Waterkeeper v. Bell Foundry Co.*

28

1    **WHEREAS**, the Defendant denies all allegations of the Complaint and

2    Notice Letter;

3    **WHEREAS**, Plaintiff and Defendant (collectively referred to herein as the

4    "Settling Parties" or "Parties") agree that it is in the Parties' mutual interest to

5    enter into a Consent Decree setting forth terms and conditions appropriate to

6    resolving the allegations set forth in the Complaint without further proceedings;

7    **WHEREAS**, all actions taken by the Defendant pursuant to this Consent

8    Decree shall be made in compliance with all applicable federal, state and local

9    rules and regulations;

10   **NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE**

11   **SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT**

12   **AS FOLLOWS:**

13   1.    The Court has jurisdiction over the subject matter of this action

14   pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A);

15   2.    Venue is appropriate in the Central District Court pursuant to Section

16   505(c)(1) of the CWA, 33 U.S.C. §1365(c)(1), because the Facility at which the

17   alleged violations took place is located within this District;

18   3.    The Complaint states a claim upon which relief may be granted

19   against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

20   4.    Waterkeeper has standing to bring this action;

21   5.    The Court shall retain jurisdiction over this matter for purposes of

22   interpreting, modifying or enforcing the terms of this Consent Decree, or for as

23   long thereafter as is necessary for the Court to resolve any motion to enforce this

24   Consent Decree.

25   **I.    OBJECTIVES**

26   6.    It is the express purpose of the Parties entering into this Consent

27   Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§

28

1   1251, *et seq.*, and to resolve those issues alleged by Waterkeeper in its Complaint.
2   In light of these objectives and as set forth fully below, Defendant agrees, *inter*
3   *alia*, to comply with the provisions of this Consent Decree, and to comply with the
4   requirements of the Storm Water Permit and all applicable provisions of the CWA.
5   Specifically, Receiving Water Limitations A, B and C at Section VI of the 2014
6   Permit, and Effluent Limitations A, B and C at Section V of the 2014 Permit,
7   which requires, *inter alia*, that Defendant develop and implement Best
8   Management Practices ("BMPs") designed to achieve Best Available Technology
9   ("BAT") and Best Conventional Pollutant Control Technology ("BCT"). Bell
10  Foundry Co. shall develop and implement BMPs necessary to comply with the
11  2014 Permit (or subsequently adopted Storm Water Permit) requirement to achieve
12  compliance with BAT/BCT standards and with applicable Water Quality
13  Standards ("WQS") including, *inter alia*, standards outlined in the "Water Quality
14  Control Plan—Los Angeles Region: Basin Plan for Coastal Watersheds of Los
15  Angeles and Ventura County" ("Basin Plan") and those contained in 40 C.F.R. §
16  131.38 ("California Toxics Rule"). BMPs must be developed and implemented to
17  prevent discharges or to reduce contamination in storm water discharged from the
18  Facility sufficient to achieve the numeric limits detailed in Table 1 at paragraph 21
19  below of this Consent Decree.

20  **II.    EFFECTIVE DATE AND TERMINATION**

21          7.    The term "Effective Date," as used in this Consent Decree, shall mean
22  the last day for the United States Department of Justice and the United States
23  Environmental Protection Agency (collectively "Federal Agencies") to comment
24  on the Consent Decree, i.e., the 45th day following the Federal Agencies' receipt
25  of the Consent Decree, or the date on which the Federal Agencies provide notice
26  that they require no further review, and the Court enters the final Consent Decree.

27          8.    This Consent Decree will terminate 3 years from the Effective Date

28

1  ("Termination Date") unless there is a prior ongoing, unresolved dispute regarding
2  Defendant's compliance with its terms. Should there be such a dispute,
3  Waterkeeper shall file a Notice of Dispute with the Court prior to the Termination
4  Date, which shall identify the issue in dispute. The filing of such a Notice of
5  Dispute shall extend the Termination Date until the Court determines the dispute
6  has been resolved and thereupon dismisses the case, or, alternatively, if the
7  Settling Parties file a stipulation for dismissal.

8        9.      Bell Foundry may move the Court to terminate the Consent Decree at
9  any time provided that the following conditions are satisfied:

10           a.      Defendant has fully implemented all measures detailed in
11                   paragraph 15 below;

12           b.      Defendant has revised and fully implemented a Storm Water
13                   Pollution Prevention Plan ("SWPPP") and Monitoring and
14                   Reporting Program ("M&RP") pursuant to the requirements of
15                   this Consent Decree and the Storm Water Permit;

16           c.      There are no ongoing, unresolved disputes regarding
17                   Defendant's compliance with this Consent Decree, including
18                   but not limited to disputes related to the payment of fees/costs,
19                   Supplemental Environmental Project ("SEP") implementation,
20                   compliance monitoring fees, implementation of storm water
21                   and non-storm water control BMPs, and compliance with
22                   numeric limits in Table 1;

23           d.      All payments required under paragraphs 41 through 45 of this
24                   Consent Decree are made; and

25           e.      Beginning with the 2017-18 Monitoring Period, monitoring
26                   data from four (4) consecutive storm water samples collected at
27                   each industrial discharge point demonstrate compliance with

28

1             the numeric limits in Table 1.

2      10.    To terminate early as provided above, Defendant shall file a motion

3 for early termination with the Court. Defendant shall provide Plaintiff and its

4 counsel with written notice at least thirty (30) days prior to filing any motion for

5 termination of the Consent Decree.

6      11.    Upon receipt of the written request to terminate, Waterkeeper may

7 conduct an inspection of the Facility within thirty (30) calendar days and Bell

8 Foundry will work with Waterkeeper to schedule and accommodate the inspection,

9 if requested, within the 30-day period. The inspection will be conducted according

10 to the rules applicable to Annual Site Inspections in paragraph 38 below. Unless

11 there is an ongoing, unresolved dispute regarding Defendant's compliance with

12 this Consent Decree, sixty (60) calendar days after written notice was given,

13 Defendant may move the Court to terminate the Consent Decree and Waterkeeper

14 shall not oppose the motion.

15 **III.   COMMITMENTS OF THE PARTIES**

16     **A.   Industrial Storm Water Pollution Control Measures**

17      12.    To ensure there are no unauthorized non-stormwater discharges, any

18 non-stormwater discharges from the Facility not authorized by the Storm Water

19 Permit shall be considered a breach of this Consent Decree.

20      13.    All storm water pollution measures required by this Consent Decree

21 will be implemented at the Facility. Any disputes over the adequacy and/or timing

22 of the implementation of BMPs shall be resolved pursuant to the force majeure (if

23 applicable) and/or dispute resolution provisions of this Consent Decree, set out in

24 Section IV below.

25      14.    <u>Compliance Standard.</u>  The storm water pollution control measures

26 required by this Consent Decree shall be designed to comply with the design storm

27 standard for treatment control BMPs set forth in Section X(H)(6) of the 2014

28

1    Permit ("Compliance Standard") based on historical rainfall measured at the South

2    Gate Transfer Station (Gauge 1256Z) located at 9530 Garfield Avenue, South

3    Gate, California 90280. The storm water pollution control measures agreed to

4    under this Consent Decree shall be operated throughout the entire year. For

5    purposes of this Consent Decree, properly documented discharges of storm water

6    and/or storm water pollutants from the Facility in connection with rainfall events

7    that exceed the Compliance Standard are not a violation of this Consent Decree

8    and are not subject to requirement to meet Table 1 Numeric Limits.

9       15.    BMP Plan. Bell has implemented the following BMPs at the areas

10    identified in the site map attached as Exhibit A hereto:

a. Remove surplus and excess equipment from the storage area in discharge area 1;

b. Remove approximately 40 tons of dirt that had accumulated on the asphalt in storage area 1;

c. Install concrete diversion berm to control flow from storage area 1;

d. Paint the buildings located in the oil storage area, forklift and maintenance area and the aluminum foundry;

e. Install Ultra Filter Sock HMRM 1.0 heavy metal remover at Outfall 1;

f. Install Ultra Filter Sock sediment remover at Outfalls 1 and 2;

g. Install inlet guard drain filter sediment remover at Outfalls 1 and 2;

h. Purchase portable covers for materials stored outside the Aluminum Foundry;

i. Remove, and will continue to remove, surplus storage racks and other production pieces;

j. Repair walls in rear of building 1 by railroad to prevent the discharge of industrial materials;

k. Repair water tanks/cooling towers;

l. Install downspout diversion from building 3;

m. Paint bins located in the truck parking area;

n. Build new baghouse collection bins;

o. Fix large crack that was close to the buildings near outfall 1 and 2; and

p. Clean area behind building 1 and placed rock under downspouts to prevent erosion

      16.    Bell shall update its SWPPP and M&RP to reflect that the drainage

1 | areas that discharge to outfalls 3 and 4 have no exposure to industrial activities and
2 | materials in accordance with Section XVII of the 2014 Permit. Bell shall include
3 | in its SWPPP an NEC Checklist and a certification statement demonstrating that
4 | outfalls 3 and 4 of the Facility have been evaluated and that industrial materials or
5 | activities (as defined in the 2014 Permit) are not and will not be in the foreseeable
6 | future exposed to precipitation.

7 | 17. Bell shall monitor and contemporaneously document storm water flow
8 | and potential discharge from the railroad tracks right-of-way on its sampling event
9 | visual observation forms required pursuant to the 2014 General Permit. In the
10 | event that discharges occur from the railroad tracks right-of-way, Bell shall sample
11 | and analyze any such discharges. If a discharge from this area is confirmed, Bell
12 | shall develop a set of BMPs consistent with the 2014 General Permit, incorporate
13 | such BMPs into an amended SWPPP, add this discharge as outfall 5 to its M&RP,
14 | and implement any BMPs as soon as practicable and by no later than Oct. 1, 2017.

15 | 18. In addition to Bell's current sweeping program, Bell will lease a
16 | monthly regenerative sweeper service after the Effective Date. Bell may cease
17 | leasing the monthly regenerative sweeper service after a treatment system has been
18 | fully implemented at the Facility. In the event a treatment system has been fully
19 | implemented at the Facility in compliance with this Consent Decree, Bell shall
20 | develop in its SWPPP, and implement at the Facility, a revised sweeping BMP
21 | program.

22 | 19. During the 2016-17 Monitoring Period, Bell shall determine flow
23 | rates and volume capacities in sufficient detail to allow the design, permitting and
24 | implementation of a treatment system per the terms of this Consent Decree.

25 | 20. The BMP Plan described in paragraph 15 above shall be completely
26 | implemented and functioning at the Facility no later than two (2) months after the
27 | Effective Date.

28 |

1 **B.    Numeric Limits**

2 21.    Numeric Limits for Storm Water Discharges.

3 **Table 1. Numeric Limits**

4

| Contaminant | Numeric Limit |
|---|---|
| Total Suspended Solids | 100 mg/L |
| pH | 6.0-9.0 S.U. |
| Chemical Oxygen Demand (COD) | 120 mg/L |
| Oil and Grease | 15 mg/L |
| Copper | 0.013 mg/L* |
| Zinc | 0.120 mg/L* |
| Aluminum | 0.75 mg/L |
| Iron | 1.00 mg/L |

NOTE:  An * next to a Numeric Limit denotes a CTR Limit.  Compliance with CTR based Numeric Limits for metals will be based on an evaluation of dissolved concentrations only.

11    22.    Action Plan for Table 1 Exceedances during the Consent Decree. For all Monitoring Periods[1] during the term of the Consent Decree, beginning with the 2017-2018 Monitoring Period, during which analyses of storm water samples collected over the Monitoring Period demonstrates an exceedance of any parameters detailed in Table 1, Bell shall prepare and submit a plan for reducing and/or eliminating the discharge of pollutants ("Action Plan") to Waterkeeper by July 30 (following the Monitoring Period in which the exceedances giving rise to the obligation to submit an Action Plan occurred). In the event that a treatment system is installed, Bell Foundry shall only be required to submit an action plan if sample analysis demonstrates 2 or more exceedances of any single parameter of the numeric limits in Table 1, or any single exceedance of more than two times.

22    23.    Action Plan Requirements. Each Action Plan submitted shall be in writing and shall include at a minimum: (1) the identification of the pollutant(s)

---

26 [1] The Monitoring Period is defined as from July 1 – June 30.

1  exceeding Table 1's numeric limit, (2) an assessment of the source(s) of each
2  exceedance, (3) the identification of additional BMPs that will be implemented to
3  achieve compliance with the relevant numeric limit(s) and (4) time schedules for
4  implementation of the proposed BMPs.  The Action Plan may also propose
5  alternative assessments of compliance on a mass loading basis or alternative means
6  of compliance with the TMDLs that may be established by the State Water Board.

7      24.   Action Plan Review.  Waterkeeper shall have 30 days upon receipt of
8  Defendant's Action Plan to provide Defendant with comments.  Within 30 days
9  from the date Waterkeeper comments on Defendant's Action Plan, Defendant shall
10 provide Waterkeeper with a written explanation if Defendant refuses to develop
11 and/or implement any of Waterkeeper's recommended additional BMPs. Any
12 disputes as to the adequacy of the Action Plan shall be resolved pursuant to the
13 dispute resolution provisions in Section IV of this Consent Decree.

14     25.   If any structural BMPs require any government agency approval, then
15 Defendant shall contact Waterkeeper to request an extension of the deadline, if
16 necessary, to implement the structural BMPs requiring agency approval.
17 Waterkeeper's consent to Defendant's requested extension shall not be
18 unreasonably withheld.

19     26.   Defendant shall have until October 1 (following the Monitoring
20 Period in which the exceedances giving rise to the obligation to submit an Action
21 Plan occurred) to implement the Action Plan. Defendant shall notify Waterkeeper
22 in writing when the Action Plan has been implemented.

23     27.   If sampling during the 2016-2017 Wet Season demonstrates 1) three
24 or more exceedances of Numeric Limits in Table 1 or 2) one or more exceedances
25 of any parameter by more than two times Numeric Limits in Table 1, Defendant
26 shall design and begin construction of a treatment system that is sized pursuant to
27 the Compliance Standard in paragraph 14.  The treatment system shall be

28

1 implemented and functioning as soon as practicable, but no later than October 1,
2 2017 (subject to any delays addressed in paragraph 28).

3     28. If the treatment system requires any government agency approval,
4 then Defendant shall contact Waterkeeper to request an extension of the deadline,
5 if necessary, to implement the activity requiring agency approval. Waterkeeper's
6 consent to Defendant's requested extension shall not be unreasonably withheld.

7     **C. Sampling and Monitoring at the Facility**

8     29. Sample Analysis and Sample Frequency. The Defendant shall collect
9 storm water samples from each industrial discharge location in the event that
10 discharges occur at the Facility during scheduled operating hours from at least four
11 (4) qualifying storm events pursuant to the 2014 Permit. The Defendant shall
12 analyze samples collected for the constituents identified in Table 1, as well as such
13 additional constituents required by the 2014 Permit. Defendant shall use a state
14 certified laboratory to conduct all analysis pursuant to this Consent Decree. The
15 Defendant shall select laboratories and analytical limits such that, at a minimum,
16 the method detection limits are below the numeric limits in Table 1.

17     30. Defendant shall notify Waterkeeper when it uploads an ad hoc
18 sampling report to the SMARTS system.

19     31. Revising the M&RP. Within thirty (30) calendar days of the Effective
20 Date of this Consent Decree, Defendant shall revise its Monitoring and Reporting
21 Program ("M&RP") for the Facility to incorporate the storm water discharge
22 requirements of this Consent Decree and the Storm Water Permit The revised
23 M&RP shall require that the samples taken from the Facility's storm water
24 discharges pursuant to the Storm Water Permit are analyzed for the constituents
25 identified in Table 1 in addition to any other constituents required by the Storm
26 Water Permit. The Defendant shall submit the revised M&RP to Waterkeeper for
27 review and comment as soon as it is completed but in any event no later than thirty

28

1   (30) calendar days of the Effective Date. Waterkeeper shall provide comments, if
2   any, to the Defendant within thirty (30) calendar days of receipt of the revised
3   M&RP. The Defendant shall incorporate Plaintiff's comments into the M&RP, or
4   shall justify in writing why any comment is not incorporated within thirty (30)
5   calendar days of receiving comments. Any disputes over the adequacy of the
6   revised M&RP shall be resolved pursuant to the dispute resolution provisions in
7   Section IV of this Consent Decree.

8       **D.    Storm Water Pollution Prevention Plan**

9       32.    SWPPP Revisions. Within thirty (30) calendar days of the Effective
10  Date of this Consent Decree, Defendant shall revise the SWPPP to identify (1)
11  current BMPs, (2) BMPs developed pursuant to this Consent Decree to control the
12  discharge of pollutants from the Facility, (3) a description of all industrial
13  activities, (4) corresponding potential pollutant sources for industrial activities, and
14  (5) a description of the potential pollutants from each source. The Defendant shall
15  submit the revised SWPPP to Waterkeeper for review and comment as soon as it is
16  completed, but in any event no later than thirty (30) calendar days of the Effective
17  Date. Waterkeeper shall provide comments, if any, to Defendant within thirty (30)
18  calendar days of receipt of the SWPPP. Defendant shall incorporate Plaintiff's
19  comments into the SWPPP, or shall justify in writing why any comment is not
20  incorporated within thirty (30) calendar days of receiving comments. Any disputes
21  as to the adequacy of the revised SWPPP shall be resolved pursuant to the dispute
22  resolution provisions in Section IV off this Consent Decree.

23      **E.    Employee Training**

24      33.    Within thirty (30) calendar days of the Effective Date, Defendant shall
25  develop a training program, including any training materials, as necessary, for
26  effective implementation of the training program ("Training Program").

27      34.    The Training Program shall ensure (a) that there are a sufficient

28

1   number of employees delegated to achieve compliance with the Storm Water
2   Permit and this Consent Decree, and (b) that these employees are properly trained
3   to perform the required compliance activities. Such Training Program shall be
4   specified in the SWPPP.

5       35.    The Training Program shall require specific training to include at least
6   the following:

7           a.   <u>Non-Storm Water Discharge Training.</u>  The Defendant shall train
8   all applicable employees about the Storm Water Permit's prohibition of non-storm
9   water discharges so that employees know what non-storm water discharges are,
10  how to detect them, and how to prevent them;

11          b.   <u>BMP Training</u>. The Defendant shall train all employees responsible
12  for BMP implementation and maintenance to ensure that BMPs are used
13  effectively to prevent the exposure, discharge, and/or treatment of storm water at
14  the Facility.

15          c.   <u>Sampling Training</u>. The Defendant shall train all individuals
16  collecting samples at the Facility pursuant to this Consent Decree or the Storm
17  Water Permit on the proper sampling protocols, including chain of custody
18  requirements, to ensure storm water and/or non-storm water samples are properly
19  collected, stored, and submitted to a certified laboratory;

20          d.   <u>Visual Observation Training.</u> The Defendant shall provide training
21  to all individuals performing visual observations at the Facility pursuant to this
22  Consent Decree and the Storm Water Permit.

23      36.    Training shall be provided by a private consultant or a representative
24  of Defendant familiar with the requirements of this Consent Decree and the Storm
25  Water Permit, and shall be repeated as necessary to ensure that all such employees
26  are familiar with the requirements of this Consent Decree, the Storm Water Permit,
27  and the Facility's SWPPP.  All new staff shall receive this training before

28

1 | assuming responsibilities for implementing the SWPPP or M&RP.

2 |     37.    The Defendant shall maintain training records to document

3 | compliance with this Section E, and shall provide Waterkeeper with a copy of

4 | these records within fourteen (14) days of receipt of a written request.

5 | **F.    Compliance Monitoring and Reporting**

6 |     38.    <u>Annual Site Inspections</u>. Up to three Waterkeeper representatives or

7 | consultants (including an attorney), may conduct one inspection ("Site Inspection")

8 | at the Facility each year that this Consent Decree is in effect. Site Inspections shall

9 | occur during normal business hours and Waterkeeper shall provide Defendant with

10 | as much notice as possible, but at least twenty-four (24) hours notice prior to a Site

11 | Inspection during wet weather, and seventy-two (72) hours notice prior to a Site

12 | Inspection during dry weather. Notice will be provided by telephone and electronic

13 | mail. During the Site Inspection, Defendant shall allow Waterkeeper and/or its

14 | representatives access to the Facility's SWPPP, M&RP, storm water monitoring

15 | records, and non-privileged reports and data related to storm water monitoring at

16 | the Facility. During the Wet Weather inspection, Plaintiff may request that

17 | Defendant collect a sample of storm water discharge from the facility's designated

18 | discharge points referenced in its SWPPP. Defendant shall collect the sample and

19 | provide a split sample to Waterkeeper. Waterkeeper's representative(s) may

20 | observe the split sample(s) being collected by Defendant's representative.

21 | Waterkeeper shall be permitted to take photographs or video recording during any

22 | Site Inspection pursuant to this paragraph. If Waterkeeper takes photographs

23 | and/or video recording, Waterkeeper shall provide Defendant with the photographs

24 | and/or video within fourteen (14) calendar days after the Site Inspection.

25 | Waterkeeper agrees that all individuals who will participate in a Site Inspection

26 | will execute a waiver and release prior to the Site Inspection.

27 |     39.    <u>Data Reporting</u>. During the term of this Consent Decree, Defendant

28 |

1 shall provide Waterkeeper with a copy of all Consent Decree and Permit
2 compliance and monitoring data, including inspection reports, related to the
3 Facility's coverage under the Storm Water Permit on a quarterly basis. The
4 Defendant shall provide Waterkeeper with all laboratory analyses related to
5 sampling at the Facility within ten (10) business days of the Defendant's receipt of
6 such information.

7     40.   <u>Document Provision</u>. During the term of this Consent Decree,
8 Defendant shall copy Waterkeeper on all documents and communications related
9 to storm water at the Facility that are submitted to the Regional Board, the State
10 Board, and/or any State, local agency, county, or municipality. Such reports and
11 documents shall be provided to Waterkeeper concurrently as they are sent to the
12 agencies and/or municipalities. Any correspondence related to storm water
13 received from any regulatory agency, State or local agency, county, or
14 municipality shall be provided to Waterkeeper within ten (10) business days of
15 receipt by the Defendant.

16     **G.**     **Environmental Project, Reimbursement of Litigation Fees and**
17             **Costs, and Stipulated Penalties**

18     41.   <u>Environmental Project</u>. The Defendant agrees to make a payment of
19 twenty thousand dollars ($20,000) within thirty (30) days of the Effective Date to
20 the Rose Foundation for a project related to water quality designed to analyze,
21 reduce, prevent, or otherwise mitigate the ecological and/or public health effects of
22 storm water and/or non-stormwater discharges into Los Angeles area waterbodies.
23 The payment shall be mailed via certified mail or overnight delivery to Tim Little,
24 Rose Foundation for Communities and the Environment, Attn: LA Waterkeeper v.
25 Bell Foundry Receiver at 1970 Broadway, Suite 600, Oakland, CA 94612-2218.
26 Defendant shall provide Waterkeeper with a copy of such payment.

27     42.   <u>Reimbursement of Plaintiffs' Fees and Costs</u>. The Defendant agrees to

28

1  partially reimburse Plaintiff for its investigation fees and costs, consultant fees and

2  costs, reasonable attorneys' fees, and other costs incurred as a result of

3  investigating and filing the lawsuit, and negotiating a resolution of this matter in an

4  amount totaling forty thousand dollars ($40,000). Defendant shall pay the $40,000

5  within thirty (30) days of the Effective Date and shall be made payable to Law

6  Office of Gideon Kracov and delivered by certified mail or overnight delivery at

7  801 S. Grand Ave., 11th Floor, Los Angeles, CA 90017.

8      43.  Compliance Monitoring Payment. Defendant shall pay a total of five

9  thousand dollars ($5,000) to compensate Waterkeeper for costs and fees to be

10  incurred for monitoring Defendant's compliance with this Consent Decree.

11  Payment shall be made within fifteen (15) days of the Effective Date payable to

12  "Los Angeles Waterkeeper" addressed to: Los Angeles Waterkeeper, 120

13  Broadway, Suite 105, Santa Monica, California 90401, and sent via courier or

14  overnight delivery. Failure to submit payment as required under this paragraph will

15  constitute a breach of the Consent Decree.

16      44.  Action Plan Payment.  If Defendant is required to submit an Action

17  Plan to Waterkeeper pursuant to this Consent Decree, Defendant's submission of

18  that Action Plan shall include an Action Plan Payment in the amount of three

19  thousand, five hundred dollars ($3,500) payable to "Los Angeles Waterkeeper"

20  addressed to: Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica,

21  California 90401, and sent via courier or overnight delivery. Failure to submit

22  payment as required under this paragraph will constitute a breach of the Consent

23  Decree.

24      45.  Stipulated Payment. The Defendant shall make a remediation payment

25  of six hundred dollars ($600) for each missed deadline included in this Consent

26  Decree.  Payments for a missed deadline shall be made for the restoration and/or

27  improvement of the watershed in the area affected by the Defendant's alleged

28

1  discharges and shall be awarded to The Rose Foundation, and mailed via certified
2  mail or overnight delivery per the terms described above in paragraph 41. The
3  Defendant agrees to make the stipulated payment within thirty (30) days of a
4  missed deadline, unless the Waterkeeper agreed in writing to an extension of that
5  deadline, and make the payment via overnight delivery or by certified mail. The
6  Defendant shall provide Waterkeeper with a copy of each such payment at the time
7  it is made.

8  **H.  Agency Review of Consent Decree**

9      46.    Plaintiff shall submit this Consent Decree to the Federal Agencies,
10  within three (3) business days of the final signature of the Parties, for agency
11  review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-
12  five (45) calendar days after receipt by both agencies, as evidenced by written
13  acknowledgement of receipt by the agencies or the certified return receipts, copies
14  of which shall be provided to Defendant if requested. In the event that the Federal
15  Agencies object to entry of this Consent Decree, the Parties agree to meet and
16  confer to attempt to resolve the issue(s) raised by the Federal Agencies.

17  **IV.  DISPUTE RESOLUTION**

18      47.    This Court shall retain jurisdiction over this matter for the purposes of
19  adjudicating all disputes among the Parties that may arise under the provisions of
20  this Consent Decree. The Court shall have the power to enforce this Consent
21  Decree with all available legal and equitable remedies, including contempt.

22      48.    <u>Meet and Confer</u>. Either of the Settling Parties may invoke the
23  dispute resolution procedures of this Section by notifying the other party in writing
24  of the matter(s) in dispute and of the disputing party's proposal for resolution under
25  this Section. The Parties shall then meet and confer in an attempt to resolve the
26  dispute no later than fourteen (14) calendar days from the date of the notice.

27      49.    If the Parties cannot resolve the dispute within 14 days after the meet

28

1  and confer described in paragraph 48, the Parties agree to request a settlement
2  meeting before the Judge assigned to this action. In the event that the Parties
3  cannot resolve the dispute by the conclusion of the settlement meeting with the
4  Judge, the Parties agree to submit the dispute via motion to the District Court.

5      50.    In resolving any dispute arising from this Consent Decree, the Court
6  shall have discretion to award attorneys' fees and costs to either party. The
7  relevant portions of the then-applicable Clean Water Act, Rule 11 of the Federal
8  Rules of Civil Procedure, or any other legal authority, and applicable case law
9  interpreting such provisions shall govern the allocation of fees and costs in
10 connection with the resolution of any disputes before the District Court. Plaintiff
11 and Defendant agree to file any waivers necessary for the Judge to preside over
12 any settlement conference and motion practice.

13 **V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO**
14     **SUE**

15     51.    In consideration of the above, upon the Effective Date of this Consent
16 Decree, the Parties hereby fully release, except for claims for Defendant's failure
17 to comply with this Consent Decree and as expressly provided herein, each other
18 and their respective successors, assigns, officers, agents, employees, and all
19 persons, firms and corporations having an interest in them, from any and all
20 alleged CWA violations claimed in the Complaint, up to and including the
21 Termination Date of this Consent Decree.

22     52.    Nothing in this Consent Decree limits or otherwise affects Plaintiff's
23 right to address or take any position that it deems necessary or appropriate in any
24 formal or informal proceeding before the Regional Board, EPA, or any other
25 judicial or administrative body on any other matter relating to the Defendant.

26     53.    Neither the Consent Decree nor any payment pursuant to the Consent
27 Decree shall constitute or be construed as a finding, adjudication, or

28

1   acknowledgement of any fact, law or liability, nor shall it be construed as an
2   admission of violation of any law, rule, or regulation. The Defendant maintains and
3   reserves all defenses they may have to any alleged violations that may be raised in
4   the future.

5        54.   <u>Force Majeure</u>. The Defendant shall notify Waterkeeper pursuant to
6   the terms of this paragraph, when timely implementation of the requirements set
7   forth in this Consent Decree becomes impossible, despite the timely good-faith
8   efforts of the Defendant, due to circumstances beyond the reasonable control of the
9   Defendant or its agents, and which could not have been reasonably foreseen and
10   prevented by the exercise of due diligence by the Defendant. Any delays due to
11   Defendant's failure to make timely and bona fide applications and to exercise
12   diligent efforts to obtain necessary permits, or due to normal inclement weather,
13   shall not, in any event, be considered to be circumstances beyond Defendant's
14   control. In no circumstances shall a claim of inability to pay be considered Force
15   Majeure.

16        a. If the Defendant claims impossibility, they shall notify Waterkeeper in
17   writing within twenty-one (21) calendar days of the date that the Defendant first
18   knew of the event or circumstance that caused or would cause a violation of this
19   Consent Decree. The notice shall describe the reason for the nonperformance and
20   specifically refer to this Section. It shall describe the anticipated length of time the
21   delay may persist, the cause or causes of the delay, the measures taken or to be
22   taken by the Defendant to prevent or minimize the delay, the schedule by which
23   the measures will be implemented, and the anticipated date of compliance. The
24   Defendant shall adopt all reasonable measures to avoid and minimize such delays.

25        b. The Parties shall meet and confer in good-faith concerning the non-
26   performance and, where the Parties concur that performance was or is impossible,
27   despite the timely good faith efforts of the Defendant, due to circumstances beyond

28

1  the control of Defendant that could not have been reasonably foreseen and
2  prevented by the exercise of due diligence by the Defendant, new deadlines shall
3  be established.

4        c. If Waterkeeper disagrees with the Defendant's notice, or in the event
5  that the Parties cannot timely agree on the terms of new performance deadlines or
6  requirements, either party shall have the right to invoke the Dispute Resolution
7  Procedure pursuant to Section IV. In such proceeding, the Defendant shall bear the
8  burden of proving that any delay in performance of any requirement of this
9  Consent Decree was caused or will be caused by force majeure and the extent of
10  any delay attributable to such circumstances.

11        d.     If applicable, Defendant shall diligently file and pursue required
12  applications for permits, consents, and approvals for the structural BMPs
13  described in this Consent Decree, and shall diligently pursue the procurement of
14  contractors, labor and materials to complete all such BMPs by the deadlines set
15  forth herein, and shall use reasonable good faith efforts to meet these deadlines.
16  Defendant shall be excused from meeting the deadlines in this Consent Decree
17  for a specific BMP if circumstances beyond the reasonable control of Defendant
18  in obtaining any required governmental permits, consents, or approvals due to
19  the permitting agency's actions or inactions or delays associated with the
20  fabrication and/or construction of materials prevent the attainment of the
21  deadline for a specific BMP. Such delays may be excused if all of the following
22  requirements are met: 1) Defendant has notified Waterkeeper via email and first
23  class mail within ten (10) days of first learning about the anticipated delay; and
24  2) Defendant continues to exercise due diligence and reasonable good faith
25  efforts in pursuing the permitting and implementation of the BMP in question
26  and proposes a reasonable revised deadline. Any excused delay shall not excuse
27  Defendant from implementing its other, unexcused obligations under this
28

1  Consent Decree.

2  **VI.  MISCELLANEOUS PROVISIONS**

3      55.  <u>Construction</u>. The language in all parts of this Consent Decree shall

4  be construed according to its plain and ordinary meaning, except as to those terms

5  defined in the Storm Water Permit, the Clean Water Act, or specifically herein.

6      56.  <u>Choice of Law</u>. The laws of the United States shall govern this

7  Consent Decree.

8      57.  <u>Severability</u>. In the event that any provision, paragraph, section, or

9  sentence of this Consent Decree is held by a court to be unenforceable, the validity

10  of the enforceable provisions shall not be adversely affected.

11      58.  <u>Correspondence</u>. All notices required herein or any other

12  correspondence pertaining to this Consent Decree shall be sent by regular mail or

13  electronic mail as follows:

14      *If to Plaintiff*:
15      Arthur Pugsley
    Melissa Kelly
16      Los Angeles Waterkeeper
17      120 Broadway, Suite 105
18      Santa Monica, CA 90401
    arthur@lawaterkeeper.org
19      melissa@lawaterkeeper.org

20      *With copies to*:
21      Bruce Reznik
    Executive Director
22      Los Angeles Waterkeeper
23      bruce@lawaterkeeper.org

24      *If to Defendant*:
25      William W. Funderburk, Jr.
    Anna L. Le May
26      CASTELLÓN & FUNDERBURK LLP
27      811 Wilshire Boulevard, Suite 1025

28

Los Angeles, CA 90017
wfunderburk@candffirm.com
alemay@candffirm.com

*With copies to*:
Cesar Cappellini, President and CEO
Edgar Cruz
Bell Foundry Co.
5310 Southern Avenue
South Gate, CA 90280
ccappe@bfco.com
ecruz@bfco.com

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

59. <u>Effect of Consent Decree</u>. Plaintiff does not, by its consent to this Consent Decree, warrant or aver in any manner that the Defendant's compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of the Defendant to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

60. <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

61. <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties.

62.    <u>Full Settlement</u>.  This Consent Decree constitutes a full and final settlement of this matter.

63.    <u>Integration Clause</u>.  This is an integrated Consent Decree.  This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

64.    <u>Authority</u>.  The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the party whom s/he represents to enter into the terms and conditions of this Consent Decree.

65.    The provisions of this Consent Decree apply to and bind the Parties, including any successors or assigns.  The Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Parties, and to legally bind the Parties to its terms.

66.    The Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.  By entering into this Consent Decree, the Defendant does not admit liability for any purpose as to any allegation or matter arising out of this Action.

IN WITNESS WHEREOF, the undersigned have executed this [Proposed] Consent Decree as of the date(s) set forth below.

LOS ANGELES WATERKEEPER

Dated:    28 March 2017          by: _____
                                  Melissa Kelly
                                  Attorney for Plaintiff
                                  LA Waterkeeper

LOS ANGELES WATERKEEPER

Dated: 28 March 2017

by: _____
Bruce Reznik
Executive Director
LA Waterkeeper

CASTELLON & FUNDERBURK LLP

Dated: 27 March 2017

by: _____
William W. Funderburk, Jr.
Attorneys for Defendant
Bell Foundry Co.

BELL FOUNDRY CO.

Dated: 27 March 2017

by: _____
Cesar Cappellini,
President and CEO

**IT IS SO ORDERED:**

Date: May 22, 2017 _____

_____
Honorable John F. Walter
DISTRICT COURT JUDGE
CENTRAL DISTRICT OF CALIFORNIA

EXHIBIT A



**North**——>

Residential Neighborhood

Building 1

Leased Parking Lot

Building 4

Building 3

Burlis Street

Industrial Manufacturing Neighbor

Southern Street

Concrete embankment

Los Angeles River flows south

Notes:
1. All outdoor areas are used for loading/ unloading
2. Outfall 4 receives run on from Burlis Street and the leased parking lot to west
3. Outfall 3 is limited to area immediately to the north of building 3
4. Roof water from west side of Building 3 runs to Outfall 4
5. All outfalls have filter cloth and sediment traps
6. Thick lines are facility boundary
7. Building 2 is no longer in service (appears as part of #1)
8. Area to the north of Building 4 is a former superfund site (Under excavation)
9. Monitoring not performed at Outfalls 3 and 4 due to NEC

BMP Notes:
c. Installed concrete diversion berm to control flow from storage area 1
e. Installed Ultra Filter Sock HMRM 1.0 heavy metal remover at Outfall 1
f. Installed Ultra Filter Sock sediment remover at Outfalls 1 and 2
g. Installed inlet guard drain filter sediment remover at Outfalls 1 and 2

▨ Drainage Area 1
⦂⦂ Drainage Area 2
▦ Drainage Area 3
▧ Drainage Area 4

**wa** 414
22349 E La Palma #114
Yorba Linda, Ca 92887
714-240-1898

**Bell Foundry Site Map 2016-17**

Bell Foundry SWPPP Industrial View
Scale 1":166'    Date: 6-23-2016